

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET NO: 14-23 |
| v. | * | SECTION: "A" (5) |
| STEVEN HAYNES | * | |

\* \* \*

# FACTUAL BASIS[*]

On June 3, 2013, SA Scott Brownlie appeared before Judge Jane Triche Milazzo, and obtained authorization to intercept wire and electronic communications to and from Steven Haynes's telephone 504-495-8568 (Target Telephone #1) and telephone 985-570-3196 (Target Telephone #2). On June 25, 2013, the court authorized interception of Haynes's telephone 985-750-5571 (Target Telephone #3). On July 10, 2013, continued authorization was approved for the interception over Target Telephone #1. Judge Milazzo authorized on July 31, 2013, interception of communications to and from telephone 863-430-4073 (Target Telephone #4) and telephone 504-669-7996 (Target Telephone #5). Also obtained with each court order was E-911 precise location data. Interception ended on August 5.

The evidence upon which this indictment is based derives from Title III intercepts of five target telephones from June to August of last year used by Steven Haynes to conduct his cocaine

---

[*] This factual basis is not a comprehensive account of every fact developed against the defendants in this matter, nor is it a complete summary of the evidence that would be adduced at trial. Rather, it sets out the essential facts that underlay this defendant's guilty plea.

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep____
___ Doc. No._____

trafficking in the Bogalusa area. Assisted by his right-hand man Raymond "RB" Bridges, who delivered drugs and money to and from customers and suppliers, Haynes dealt typically in ounce-sized quantities of powder to co-defendants, who in turn "cooked" it into crack. Haynes was well aware that his powder would be converted to base, since he was intercepted at times discussing with this customers his product and the quality of the crack it produced.

"RB," Haynes's top lieutenant and general factotum, was as responsible as Haynes for the full amount of attributable cocaine, since he was, in effect, the organization's "go-to guy" for the diurnal tasks that attended Haynes's operation.

Haynes's main source of supply was Roderick "Bull" Edwards, from Lumberton, MS. Edwards is a named, but unindicted, co-conspirator because the DEA in the Southern District of Mississippi has also developed a case against Edwards, featuring a multi-kilo amount of cocaine that Edwards supplied to Haynes, documented in our T-III intercepted calls. As a result, Edwards will be indicted for that same deal in the Southern District of Mississippi in a discrete conspiracy.

On August 5, 2013, Haynes was arrested by the Louisiana State Police in Bogalusa and charged with possession with intent to distribute cocaine when approximately one (1) kilogram of cocaine he obtained from Edwards in Mississippi was discovered in his vehicle. Target Telephones #1, #4 and #5 were in his possession and state search warrants were obtained. A subsequent search of Target Telephone #5 revealed several telephone numbers in the contact section that are pertinent to this investigation.

The intercepted calls also culminated in several seizures by enforcement action, reflected in the substantive counts: counts 2 and 3, however, reflect sales by Haynes and his lieutenant "RB" Bridges to an informant, with count 4 representing a sale by Haynes to the informant. These three

deals formed part of the probable cause to obtain T-III authorization.

## SUMMARIES OF CO-CONSPIRATORS' INVOLVEMENT WITH HAYNES

### RODERICK EDWARDS (unindicted co-conspirator from Lumberton):

Edwards supplied kilogram quantities of cocaine to Haynes throughout the Title III intercepts over Haynes's phones (Target Telephones #1, #2, #3, #4 and #5). In turn, Haynes regularly distributed cocaine to over twenty-five subjects. The known quantities sold to customers ranged from a 1/4 ounce to 14 ounces. Haynes obtained cocaine from Edwards on at least seven (7) occasions between June 4 and August 5, 2013. The quantity of cocaine distributed by Haynes and the dollar amounts mentioned by return call. Haynes told Edwards he was waiting on Edwards. Later that same date, at approximately 7:14 p.m. during session number 32, Haynes, over Target Telephone #4, received a call from Edwards. Edwards stated, "That nigger just called me, he had one." Haynes replied, "Okay, that will work. I'm at home anyway." Edwards said they could split it (cocaine) and Haynes said they could wait until tomorrow. (Note: Summary of intercepted communications where Edwards alerted Haynes to the availability of one kilogram of cocaine. Edwards asked if Haynes would split the kilogram between the two of them.) On August 3, 2013, Haynes spoke with Edwards during session number 82 over Target Telephone #4 and Edwards indicated an associate had been shot and he would call Haynes in a few hours. Edwards did not call Haynes back.

### LARRY BRIDGES:

He was not captured over the T-III interceptions; he has, however, admitted to our agents of his involvement with Steven Haynes and he has agreed to cooperate with us.

**RAYMOND BRIDGES:**

Bridges was Haynes's courier who transported cocaine from Mississippi locations in Lumberton and Hattiesburg to Bogalusa. Bridges stored Haynes's cocaine at his Louisiana Avenue residence until late June early July 2013. Haynes became suspicious that Bridges added "cut" to the cocaine for his own personal gain or use and Haynes started to store the cocaine at Doughty's residence. Haynes further utilized Bridges to transport the cocaine from Bridges's residence to Haynes's residence as customers ordered quantities of cocaine from Haynes. When Haynes was out of town or when he moved to New Orleans East, Haynes utilized Bridges to divide cocaine into different quantities and distribute those quantities to several of his customers. Bridges also transported drug funds to Edwards in Lumberton. Bridges was also involved in distributing cocaine to his own customer base. As the investigation progressed, Haynes became upset with Bridges over the cocaine issues and personal issues dealing with Haynes's marriage. Despite the problems with Bridges, the investigation determined that Bridges was Haynes's closest associate and was with Haynes on an almost daily basis in Bogalusa. Following Haynes's arrest, Haynes regularly communicated with Bridges from the Washington Parish Jail over recorded lines. During several communications Haynes instructed Bridges to collect drug funds from members of the DTO, including May. Bridges also contacted Edwards and informed him of Haynes's arrest. Multiple communications were intercepted between Bridges and Edwards over wire intercepts on Edwards's telephone (Note: Wire intercepts were conducted by the DEA Gulfport Office/Southern District of Mississippi).

**MARY DOUGHTY:**

Doughty's involvement in storing Haynes's cocaine supply during the Title III is evident throughout the aforementioned session numbers, GPS data and physical surveillance. Haynes's contact with her directly coincided with Haynes distributing cocaine to several other subjects and storing cocaine after obtaining a new supply of cocaine from his source of supply. Haynes immediately secured his cocaine supply at Doughty's residence when he thought law enforcement was in the area of his residence. Doughty's knowledge of Haynes's illegal activity is also displayed throughout the intercepted communications. Doughty talked in code on multiple occasions when she had subjects unrelated to the investigation at her residence. Doughty also offered to cover for Haynes as she believed he was going to deliver cocaine to her residence. Doughty was very conscious about not disrupting Haynes's cocaine activity and consistently notified him if she left her residence or had subjects at her residence. The investigation determined Doughty's involvement spanned between late June until Haynes's arrest on August 5, 2013. Haynes obtained several kilograms of cocaine from his source of supply during that time, which he stored at Doughty's residence. Haynes utilized Doughty and Doughty's residence to store cocaine after Haynes lost trust in Bridges, who originally stored the cocaine at the beginning of the Title III interceptions.

**DARIN FIELDS:**

The investigation determined Fields purchased cocaine from Haynes on multiple occasions but the quantity of the purchases were not definitive. Fields appeared to purchase at least one ounce from Haynes. It also appeared that Fields purchased multiple ounces of cocaine from Haynes on July 12, 2013. Shortly after Fields complained about the cocaine's quality and Haynes

said he would buy "them" (multiple ounces) back.

### GERARD JACKSON:

Based on the aforementioned intercepted communications, the investigation determined Jackson purchased cocaine from Haynes on several occasions between June and July 2013. During the intercepted communications Haynes and Jackson did not discuss quantities but based on the prices Haynes quoted for the cocaine it can be determined Jackson purchased multiple ounces of cocaine at a time from Jackson.

### JOHN NUTTER:

On July 3, 2013, as part of an ongoing Title III investigation involving Steven Haynes, agents intercepted communications relative to John Nutter obtaining cocaine from Haynes and Haynes storing his cocaine at Mary Doughty's residence. After leaving Bogalusa, Nutter was stopped by Mississippi Highway Patrol near Columbia, Mississippi and arrested when Exhibit 32, approximately 395.7 grams of cocaine, was discovered inside his vehicle along with $7,997.00 in U.S. currency. Contained within this DEA 6 Report of Investigation are the details of the arrest and seizure.

### DONELLE PIGOTT:

All of the intercepted communications display a pattern of Pigott obtaining multiple ounce quantities of cocaine from Haynes and selling the cocaine to several unknown associates. Also, Pigott facilitated several cocaine transactions between Haynes and unknown associates. Pigott also obtained cocaine from Bridges to sell to unknown associates. Pigott was "fronted" the cocaine by Haynes and appeared to be involved with converting the cocaine to crack cocaine.

### DONNIE PITTMAN:

6

Based on the investigation and intercepted communications, the investigation determined Pittman purchased multiple ounces of cocaine from Haynes on several occasions. On one occasion Haynes supplied Pittman with four ounces of cocaine. It appeared Pittman usually obtained at least two ounces as documented during intercepted calls. Pittman appeared to be a trusted customer of Haynes. Haynes "fronted" cocaine to Pittman while not allowing other customers to obtain cocaine without paying at the same time.

### ALEX SCOTT:

Based on the intercepted communications between Haynes and Scott, the investigation determined Scott was a high level purchaser of cocaine from Haynes. Agents also believe Scott converted the cocaine purchased from Haynes into crack cocaine based on a conversation where Scott, shortly after obtaining four ounces of cocaine from Haynes, called Haynes to complain about the quality of cocaine. This occurred during the investigation with several other subjects who converted cocaine to crack cocaine. Based on intercepted communications, Scott obtained approximately twenty-five (25) ounces of cocaine from Haynes between June 4, 2013 and July 14, 2013. There were a few other occasions that Scott may have obtained cocaine from Haynes but the intercepted communications were not definitive. Also, the investigation did not intercept communications between Haynes and Scott for several days as new affidavits were prepared for Target Telephone #3 and Target Telephone #5.

### TORRANCE SCOTT:

Based on the intercepted communications between Haynes and Scott, the investigation determined Scott was a high level purchaser of cocaine from Haynes. Based on intercepted communications, Scott obtained approximately twelve (12) ounces of cocaine from Haynes (six

(6) ounces on two occasions). There were a few other occasions that Scott may have obtained cocaine from Haynes but the intercepted communications were not definitive.

### WALTER VAUGHN:

On July 16, 2013, as part of a Title III investigation involving Steven Haynes, agents intercepted communications and observed activity during physical surveillance relative to Walter Vaughn obtaining cocaine and having it converted to crack cocaine by Michael Wise. Later that day Vaughn was stopped by the Louisiana State Police and arrested for being in possession of Exhibit 33, approximately 33 grams of crack cocaine. Contained within this DEA Report of Investigation are the details of the arrest and seizure.

### MICHAEL WISE:

Based on the intercepted communications between Haynes and Wise, surveillance and arrests during the Title III investigation, agents have determined Wise obtained cocaine from Haynes on numerous occasions between June and August, 2013. Wise most likely obtained two to three ounces of cocaine, if not more, at a time from Haynes. Wise converted the cocaine to crack cocaine for resale. Wise also facilitated several cocaine transactions between Haynes and others, including Legard and "Ralph." Wise converted cocaine to crack cocaine for Vaughn on several occasions. Wise and Haynes communicated almost every day during the Title III investigation. Haynes trusted Wise with details about Bridges, who was Haynes's courier and Lieutenant, and Edwards, who was one of Haynes's cocaine sources. Haynes trusted Wise enough to "front" the cocaine to Wise for payment at a later time. Wise was also involved in the sale of large flat screen televisions. The origination of the televisions has yet to be determined. Wise is also suspected to be involved in the possession and sale of weapons based on an intercepted communication with

Vaughn and Haynes on June 7, 2013, over Target Telephone #2. Wise was also involved in obtaining prescription medication with others from a pain management clinic in Covington, LA. Wise was one of the major components of Haynes drug trafficking organization.

_Steven Haynes_ 9/30/2014  
STEVEN HAYNES            Date  
Defendant

_Michael E. McMahon_ 9/30/2014  
MICHAEL E. McMAHON            Date  
Assistant United States Attorney

_Michael Ciaccio_ 9/30/2014  
MICHAEL PAUL CIACCIO       Date  
Attorney for Defendant